GULOTTA, Judge.
Plaintiff appeals from the dismissal of his suit for loss of profit to which he claims entitlement in connection with the purchase and sale of commodity “futures”. We affirm.
At approximately 1:00 p. m. on May 11, 1977, Richard Meunier placed a telephone order with John Doherty, an account executive of the defendant corporation, for the purchase of one 5,000 bushel contract of July 1977 soybeans at a price of $9.08, or less, per bushel. Doherty transmitted plaintiff’s purchase order to a phone clerk, also an employee of the defendant corporation, at the Chicago Board of Trade. This order was received by the phone clerk in Chicago at 1:04 p. m. on May 11th.
According to the testimony of Vincent J. Liuzza, Jr., Vice President and Manager of the New Orleans office of the defendant corporation, the procedure followed in the purchase of commodity futures is that the phone clerk passes the purchase order on to a runner, also an employee of the defendant corporation, who then brings the order to an independent broker member of the Board of Trade in the appropriate “pit”. The Board of Trade broker then executes the order to the best of his ability and indicates in writing on a “piece of paper” whether or not they were able to fill or not fill the order. This paper is then given to the runner who returns it to the phone clerk.
In the instant case, plaintiff’s order was not filled nor was plaintiff or Doherty advised on May 11th that the order had not been filled. It was not until the following day when plaintiff requested Doherty to sell at a substantial per bushel price increase that plaintiff was notified that no purchase had been made for him at the Chicago Board of Trade. Not seriously disputed is plaintiff’s claim that the difference in the purchase and selling price amounted to approximately $1,775.00 which plaintiff claims is the loss sustained by him as a result of defendant’s failure to fill the purchase order.
Liuzza, a member of the Chicago Board of Trade, stated that the broker who fills the purchase order is an independent contractor on the floor of the exchange, who may be one of fifty brokers dealing with soybean futures at any given time. These *195 brokers are usually selected by the Floor Manager for the Board of Trade and handle not only defendant’s business but also the business of other brokerage houses.
Defendant excuses the failure by the Board of Trade broker to fill plaintiff’s order or the failure to notify plaintiff or Doherty that the order had not been filled on a “hectic” or “fast” market on the day that plaintiff’s order was placed. In this connection, according to Liuzza, on such days it is “physically impossible for everyone to get every bid and every order that’s bid.”
It is undisputed that in January 1977 plaintiff executed a customer’s agreement with defendant which acknowledged, among other things:
“All transactions executed for my accounts shall be subject to the constitution, rules, regulations and customs, as they may be amended, of the Exchange (and its Clearing House, if any) where executed and to the provisions of the Commodity Exchange Act, as it may be amended, and to the rules and regulations promulgated from time to time thereunder.”
In connection with the Customer’s Agreement, defendant introduced into evidence, over plaintiff's objection (which we consider later in this opinion) a rule of the Chicago Board of Trade adopted on April 5, 1977 which states:
“Whenever price fluctuations of the commodities dealt in on the Exchange are rapid and the volume of business is large, it is of common occurrence that different prices are bid and offered for the same delivery in different parts of the pit at the same time. The normal result of such conditions is, at times, the execution by members of orders at prices not officially quoted, or the inability of a member to execute an order at a limited price. This is unavoidable, but is in nowise the fault of anyone; and it is not permissible for members to readjust the price at which orders have been filled, nor to report as filled orders that have not been filled. To do so is a grave offense.”
According to Liuzza this rule is taken verbatim from a Chicago Board of Trade Regulation numbered 1030-16R, which was adopted on July 31,1934. In a July 15,1977 letter to the Chicago Board of Trade, plaintiff stated that he was aware of the existence of Rule 1030 — 16R, but was of the opinion that his purchase order did not come under the rule.
The trial judge in reasons for judgment stated that “the negligence in this matter, if any, was not upon Conti Commodity Services, Inc., and for this reason, the plaintiff cannot recover.” We agree.
It is plaintiff’s contention that the trial judge erred in permitting the filing into evidence an affidavit of the Secretary of the Chicago Board of Trade to which are attached the 1934 1030-16R Regulation and the April 5, 1977 Rule of the Board of Trade. Plaintiff also claims error on the part of the trial judge in allowing into evidence an exhibit containing the rules of the Chicago Board of Trade including the rule in question and an interoffice memorandum of defendant which contains the rule in question.
Plaintiff further claims defendant failed to show why the order was not filled. According to plaintiff, defendant was in possession of the means of determining why the order was not completed and should be required to furnish proof that failure of fulfillment was not caused through the negligence of one of its employees. Plaintiff further contends that no evidence was introduced by defendant that the runner received the purchase order from the phone clerk or that the runner delivered the order to the Board of Trade broker. According to plaintiff, because neither Doherty nor himself were informed until the next day that the contract was not filled (although a second inquiry was made) indicates that either the runner failed to deliver the order slip to the broker or failed to return it to the phone clerk.
Considering the arguments in the order presented, we find no merit to plaintiff’s contention that the trial judge erred *196 in admitting into evidence the Board of Trade rule. It is true, as pointed out by plaintiff, the affidavit of the Secretary of the Board of Trade to which is attached the pertinent rules and regulations does not meet the requirements of LSA-C.C.P. article 1393 and article 1395[1] for the reason that the affidavit does not state that the secretary had legal custody of the record and the record is not accompanied with a certificate that the secretary has that custody. Nevertheless, plaintiff, in January 1977, signed the agreement with defendant in which he acknowledged that the transactions would be governed by the rules and regulations of the Exchange. Also, in a July 15, 1977 letter addressed to the Board of Trade plaintiff stated that he was aware of the Chicago Board of Trade rule. Under the circumstances, we conclude that the trial judge properly admitted into evidence the rules and regulations.
Now turning to a consideration of the pertinent Board of Trade’s rule, we conclude that the rule applies to situations involved in the instant case. It is clear that the purpose of the rule is to exonerate from liability brokers who, for one reason or another, are unable to execute an order at a limited price where price fluctuations are rapid and when the market is “fast”.
Furthermore, we reject plaintiff’s argument that defendant failed to carry the burden of showing that its employees were not negligent. Plaintiff did not present a prima facie showing that failure to fill the order resulted from the negligence of defendant’s employees, particularly when there existed “a fast market”. Plaintiff’s argument is based on conjecture that defendant’s employee, the phone clerk, failed to give the order to the runner or that the runner failed to transmit the order to the Board of Trade broker or failed to return to the phone clerk the notation of the unfilled order.[2]
According to the description of the “hectic” negotiations surrounding fast market transactions, it is more probable than not that the failure to fill the order resulted from the Board of Trade broker’s inability to fill the order rather than the negligence of the phone clerk or runner to transmit the order. At any rate, this is plaintiff’s burden to carry and not defendant’s burden to exculpate himself. Plaintiff failed to carry that burden.
The trial judge properly concluded in his reasons for judgment that negligence, if any, “was not upon Conti Commodity Services, Inc. . . . ” The evidence supports that conclusion. Accordingly, the judgment of the trial court is affirmed.

AFFIRMED.

. Articles 1393 and 1395 reads as follows:
“Art. 1393. Proof of official records by official publication.
An official record, or an entry therein, of the United States, of this state, of any other state or territory of the United States, of any foreign country, or of any political subdivision, corporation or agency of any of the above, when admissible for any purpose, may be evidenced by an official publication thereof . . .
“Art. 1395. Same; out of state records.
An official record, or an entry therein, of the United States, of any state other than Louisiana, of any territory of the United States, of any foreign country, or of any political subdivision, corporation or agency of any of the above, when admissible for any purpose, may be evidenced by a copy attested by the officer having legal custody of the record, or by his deputy, and accompanied with a certificate that such officer has the custody , . . ”

. The “order slip” admitted into evidence shows three time stamps: May 11, 1:04 p. m., May 11, 1:27 p. m. and May 11, 1:28 p. m. Doherty testified that the second time indicates a follow-up of the 1:04 p. m. order. Liuzza testified that the 1:28 p. m, stamp indicates the time that the phone clerk received the answer back from the “pit” indicating that the broker was unable to fill the plaintiffs order.
In response to defendant’s suggestion that the later time stamp indicates that the order was not filled, plaintiff claims the later stamp indicates only that a follow up check was made. Resolution of this factual dispute most favorable to plaintiff would not change our result.